## APPEAL OF THE DAILY PANTAGRAPH, INC.

Docket No. 4126. Promulgated January 11, 1928.

*Arnold L. Guesmer, Esq.*, for the petitioner.
*J. K. Moyer, Esq.*, for the Commissioner.

1174

**OPINION.**

TRUSSELL: The record of this action contains the testimony of three disinterested witnesses, all of whom were or had been engaged

in the business of publishing newspapers in the smaller cities of Illinois, Iowa, Missouri, and Wisconsin, and one of them had had experience in the purchase and sale of daily newspapers in such cities during a period of 45 years. These witnesses all gave opinion testimony upon the value of the Pantagraph circulation structure, Associated Press franchise, and good will. They discussed these questions from the standpoint of their personal knowledge of the business of the Pantagraph and generally from their experience and knowledge acquired in the publication and the purchase and sale of newspaper properties. All of them agreed that the circulation structure of the Pantagraph had on January 1, 1908, a value of not less than $10 per unit of individual subscriptions. One of these witnesses gave it as his opinion that the Associated Press franchise had a cash value of $30,000; another that this franchise was worth not less than $25,000. Respecting the value of petitioner's good will, one of these witnesses gave it as his opinion that it was worth $50,000; another that the going business, including tangibles and intangibles, was worth between $325,000 and $375,000; and the third testified that if he had had the money he would have been willing to pay for the going business of the Pantagraph one-half million dollars.

Concerning the value of petitioner's land, buildings, and equipment, the record contains the testimony of the general manager of the Pantagraph, another employee who had been with the business since 1882, and a disinterested witness who had been engaged in the building business in Bloomington since 1889. The last witness gave it as his opinion that the building owned and occupied by the Pantagraph on January 1, 1908, had a value of $35,000. The business manager of the Pantagraph and the employee witness testified in detail with respect to all the properties and equipment of the company, showing the history of such properties from the time acquired and their condition on January 1, 1908, and the probable life of both buildings and equipment.

Upon consideration of all of this testimony we have arrived at the conclusion that the tangible and intangible properties, which were turned in to the Pantagraph Company in exchange for stock and paid-in surplus, had on January 1, 1908, a total value of $320,930.01 as set forth in the findings of fact and that the probable life of the buildings and equipment was, buildings 55 years, plant and equipment 33 years, and furniture and fixtures 25 years. We, therefore, find (1) that the additional cash values of land, buildings, and plant aggregating $39,397.68, should be reflected in the invested capital computation for the calendar years 1919 to 1921, inclusive; (2) that the values of circulation structure, Associated Press service and good

will, although properly reflected in paid-in surplus in accordance with the opinion and decision of the Board in *Shope Brick Co.*, 5 B. T. A. 1042, may not be, under the provisions of the Revenue Acts of 1918 and 1921, and in the opinion and decision of the Board in the case of the *Herald-Despatch Co.*, 4 B. T. A. 1096, included or reflected in invested capital; (3) the amount of current earnings available for dividends in any year may not be reduced by any so-called tentative tax computation. *L. S. Ayers & Co.*, 1 B. T. A. 1135; (4) income and profits taxes for prior years, the collection of which is not barred by the statute of limitations, may be deducted from surplus in accordance with section 1207 of the Revenue Act of 1926; (5) in the computation of net income and invested capital as affected by depreciation, the reasonable allowance for exhaustion, wear, and tear upon the petitioner's buildings should be computed at the rate of 1.8 per cent of the value here found as of January 1, 1908, and upon the plant and equipment at the rate of 3 per cent, and upon furniture and fixtures at the rate of 4 per cent; (6) the asserted deficiency for 1916 is barred by the statute of limitations. Respecting the alleged deficiencies for 1909, 1912, 1913, 1914, and 1915, and the overassessments shown for the years 1910 and 1917, the Board has no jurisdiction.

The deficiencies for the years 1919 to 1921, inclusive, may be redetermined in accordance with the foregoing findings of fact and conclusions of law.

Reviewed by the Board.

> *Judgment will be entered upon 15 days' notice, pursuant to Rule 50.*